**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNIE LEE SAVORY, | ) | |
| | ) | No. 17 C 204 |
| *Plaintiff*, | ) | |
| | ) | Hon. Gary Feinerman, |
| *v.* | ) | District Judge |
| | ) | |
| CHARLES CANNON, *et al.*, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOHNNIE LEE SAVORY'S RESPONSE**
**IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS**


Arthur Loevy
Jon Loevy
Elizabeth Mazur
Steven Art
LOEVY & LOEVY
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Flint Taylor
John L. Stainthorp
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0700

Locke E. Bowman
Alexa Van Brunt
MACARTHUR JUSTICE CENTER
Northwestern University
School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-1271

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

PLAINTIFF'S COMPLAINT .......... 2

ARGUMENT .......... 2

I. THIS COURT SHOULD NOT CONSIDER DEFENDANTS' REFERENCES TO DISPUTED FACTS IN RESOLVING THE MOTION .......... 2

II. SAVORY'S FEDERAL CLAIMS ACCRUED WITH HIS PARDON AND ARE TIMELY FILED .......... 4

A. Federal Accrual Principles Dictate That Claims Concerning Wrongful Convictions Accrue When the Conviction Is Ultimately Set Aside .......... 4

B. Savory's Due Process Claims Accrued with His Pardon .......... 7

C. Savory's Involuntary Confession Claims Accrued with His Pardon .......... 11

1. Savory's Involuntary Confession Was Used Throughout His Criminal Case, Including In Both of His Trials, In Violation of the Fifth and Fourteenth Amendments .......... 12

2. Savory's Involuntary Confession Claims Concerning Savory's First Trial Did Not Accrue When His First Conviction Was Reversed .......... 13

III. SAVORY'S FOURTH AMENDMENT CLAIM FOR DETENTION WITHOUT PROBABLE CAUSE AFTER LEGAL PROCESS IS VIABLE .......... 14

IV. SAVORY'S DUE PROCESS CLAIMS REGARDING DESTRUCTION OF EVIDENCE ARE PLAUSIBLY PLEADED .......... 15

A. Savory Plausibly Pleads That Defendants Acted In Bad Faith Destroying Evidence .......... 15

B. Savory Plausibly Pleads That the Evidence At Issue Was Potentially Exculpatory .......... 17

C. Savory's Claim Is Not Defeated By His 32-Year Wait For A DNA Testing Order .......... 18

V. SAVORY'S DUE PROCESS CLAIMS REGARDING SUPPRESSION OF EVIDENCE ARE PLAUSIBLY PLEADED .......... 19

## TABLE OF CONTENTS (cont.)

**Page**

VI. SAVORY'S FAILURE TO INTERVENE CLAIMS ARE PLAUSIBLY PLEADED............ 20

VII. SAVORY'S SECTION 1983 CONSPIRACY CLAIMS ARE PLAUSIBLY PLEADED....... 22

VIII. SAVORY HAS STATED A *MONELL* CLAIM............................................................................ 24

IX. SAVORY'S STATE-LAW CLAIMS FOR MALICIOUS PROSECUTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CONSPIRACY..................................... 25

X. SAVORY'S INDEMNIFICATION CLAIM SURVIVES............................................................ 25

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. City of S. Bend*, 433 F.3d 550 (7th Cir. 2006)....................25

*Alston v. City of Madison*, 853 F.3d 901 (7th Cir. 2017)....................6

*American Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012) ....................6

*Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015) ....................18

*Armstrong v. Norsetter*, 2016 WL 4087325 (W.D. Wis. July 29, 2016) ....................15

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) ....................8, 12, 21

*Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736 (E.D. Wis. 2014) ....................25

*Boothe v. Sherman*, 2014 WL 4362842 (N.D. Ill. Sep. 3, 2014) ....................25

*Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001).................... 22

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)....................15, 22, 24

*Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012)....................9, 10, 11

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) .................... 22

*Cage v. City of Chicago*, 2010 WL 3613981 (N.D. Ill. Sep. 8, 2010) ....................27

*Chavez v. Martinez*, 538 U.S. 760 (2003).................... 12, 13

*Coleman v. City of Peoria*, 2016 WL 5497363 (C.D. Ill. Sep. 27, 2016) ....................26

*Crowder v. Lash*, 687 F.2d 996 (7th Cir. 1982) ....................24

*CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990 (N.D. Ill. 2011)....................24

*DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000).................... 10

*Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) ....................7, 8, 12

*Duarte v. City of Chicago*, 1990 WL 165302 (N.D. Ill. Oct. 25, 1990) ....................24

*Eichwedel v. Curry*, 770 F.3d 275 (7th Cir. 2012) ....................9

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012)....................3, 4

## TABLE OF AUTHORITIES (cont.)

**Cases** **Page(s)**

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........ 23

*Ex parte Royall*, 117 U.S. 241 (1886) ........ 15

*Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764 (N.D. Ill. 2011) ........ 3

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ........ 2, 4

*General Elec. Captial Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ........ 2, 3

*Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008) ........ 7

*Global Relief v. New York Times. Co.*, 2002 WL 31045394 (N.D. Ill. Sep. 11, 2002) ........ 3

*Hadley v. Quinn*, 524 Fed. App'x 290 (7th Cir. 2013) ........ 10

*Hampton v. City of Chicago*, 2017 WL 2985743 (N.D. Ill. July 13, 2017) ........ 22

*Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016) ........ 6, 10

*Heck v. Humphrey*, 512 U.S. 477 (1994) ........ *passim*

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995) ........ 3, 19

*Hill v. City of Chicago*, 2009 WL 174994 (N.D. Ill. Jan. 26, 2009) ........ 12

*Hobley v. Burge*, 2004 WL 1243929 (N.D. Ill. June 3, 2004) ........ 7

*Howard v. City of Chicago*, 2004 WL 2397281 (N.D. Ill. Oct. 25, 2004) ........ 7, 12

*Jackson v. City of Peoria*, 2017 WL 1224526 (C.D. Ill. Mar. 31, 2017) ........ 16

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) ........ 3, 19

*Jimenez v. City of Chicago*, 830 F. Supp. 2d 432 (N.D. Ill. 2011) ........ 22

*Johnson v. Maywood*, 2012 WL 5862756 (N.D. Ill. Nov. 19, 2012) ........ 23

*Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013) ........ 15

*Koh v. Graf*, 2013 WL 5348326 (N.D. Ill. Sep. 24, 2013) ........ 23

*Loubser v. Thacker,* 440 F.3d 439 (7th Cir.2006) ........ 25

## TABLE OF AUTHORITIES (cont.)

**Cases** **Page(s)**


*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ........ 7, 15, 16, 17

*Manuel v. City of Joliet*, 590 Fed. App'x 641 (7th Cir. 2015) ........ 16

*Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014) ........ 12

*Mercola v. Abdou*, 2015 WL 3545414 (N.D. Ill. June 5, 2015) ........ 4

*Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000) ........ 24

*Moore v. Burge*, 771 F.3d 444 (7th Cir. 2014) ........ 6, 12, 13

*National Cas. Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010) ........ 6

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) ........ 7

*Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003) ........ 6

*Orange v. Burge*, 2005 WL 742641 (N.D. Ill. Mar. 30, 2005) ........ 7, 12

*Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. Aug. 5, 2004) ........ 7, 12, 24

*Payano v. Potter*, 554 Fed. App'x 522 (7th Cir. 2014) ........ 15

*People v. Savory*, 403 N.E.2d 118 (Ill. App. Ct. 1980) ........ 14

*People v. Savory*, 435 N.E.2d 226 (Ill. App. Ct. 1982) ........ 14

*People v. Savory*, 722 N.E.2d 220 (Ill. App. Ct. 1999) ........ 19

*People v. Savory*, 756 N.E.2d 804 (Ill. 2001) ........ 19

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) ........ 21

*Phillips v. City of Chicago*, 2015 WL 5675529 (N.D. Ill. Sept. 24, 2015) ........ 12

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) ........ 5, 11, 15

*Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985) ........ 25

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027 (7th Cir. 2004) ........ 4

*Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013) ........ 12

**TABLE OF AUTHORITIES (cont.)**

**Cases** **Page(s)**

*Rodriguez v. Cook County*, 664 F.3d 627 (7th Cir. 2011)........6, 15

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009)........22

*Saunders v. City of Chicago*, 146 F. Supp. 3d 957 (N.D. Ill. 2015)........12

*Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006)........10

*Skinner v. Switzer*, 562 U.S. 521 (2001)........5

*Smith v. Illinois*, 2009 WL 1515306 (N.D. Ill. May 27, 2009)........24

*Smith v. Northeastern Ill. Univ.*, 388 F.3d 559 (7th Cir. 2004)........21

*Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001)........15

*Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006)........12, 13

*Spencer v. Kemna*, 523 U.S. 1 (1998)........9

*Streckenbach v. Vandensen*, 2017 WL 3585074 (7th Cir. Aug. 21, 2017)........16

*Taylor v. City of Chicago*, 80 F. Supp. 3d 817 (N.D. Ill. 2015)........12

*Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2010)........26

*Tillman v. Burge*, 813 F. Supp. 2d 946 (N.D. Ill. 2011)........12

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000)........26

*Tully v. Del Re*, 2002 WL 31175983 (N.D. Ill. Oct. 1, 2002)........25

*United States v. Holm*, 326 F.3d 872 (7th Cir. 2003)........26

*United States v. Sasson*, 62 F.3d 874 (7th Cir. 1995)........25

*Vandenburgh v. Ogden*, 2016 WL 403663 (N.D. Ill. Feb. 3, 2016)........23

*Varvaris v. Delia*, 1996 WL 521287 (N.D. Ill. Sep. 11, 1996)........24

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011)........2, 21

*Walker v. Thompson,* 288 F.3d 1005 (7th Cir. 2002)........25

**TABLE OF AUTHORITIES (cont.)**

**Cases** **Page(s)**

*Walker v. White*, 2017 WL 2653078 (N.D. Ill. June 20, 2017) ........ 17

*Wallace v. Kato*, 549 U.S. 384 (2007) ........ 5

*Warren ex rel. Warren v. Dart*, 2010 WL 4883923 (N.D. Ill. Nov. 24, 2010) ........ 23

*Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017) ........ 10

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ........ 5

*Wilson v. City of Chicago*, 2009 WL 3242300 (N.D. Ill. Oct. 7, 2009) ........ 23

*Wilson v. O'Brien*, 2011 WL 759939 (N.D. Ill. Feb. 25, 2011) ........ 12

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004) ........ 4

## INTRODUCTION

Plaintiff Johnnie Lee Savory was wrongly convicted of the double murder of Connie Cooper and James Robinson. Savory had nothing to do with the crime, no physical evidence or eyewitness connected him to it, he had no motive and there was no reason to suspect him, and there was no reason to disbelieve his alibi. Nonetheless, at the tender age of 14, Savory became Defendants' sole focus. The arrested him, interrogated him for 31 hours, extracted a false and involuntary confession from him, fabricated false reports and witness testimony to use against him, and caused him to be charged, prosecuted, and convicted twice of double murder. Savory spent 30 years in prison and fought for nearly 40 years before the governor of Illinois finally pardoned him in 2015.

Savory filed this suit against the police officers he alleges framed him. Defendants move to dismiss, arguing that Savory's claims are time barred and fail to state a claim. Dkt. 71. Defendants' arguments with respect to Savory's federal claims lack merit. All of Savory's section 1983 claims accrued with his pardon and were timely filed. His Fifth Amendment claims concerning his involuntary confession are not limited to his first criminal trial. Savory has plausibly stated a claim for detention without probable cause after legal process, in violation of the Fourth Amendment. He has sufficiently pleaded due process claims regarding Defendants' suppression and destruction of evidence. And he plausibly states claims that Defendants failed to intervene to prevent the constitutional violations at issue, that they conspired against him, and that the City of Peoria is liable for its policies. This Court should deny Defendants' motion to dismiss Savory's federal claims.[1]

---

[1] To the extent the Court agrees with Savory that his federal claims accrued at earliest with his pardon, that conclusion would compel a finding that Savory's state-law claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy were not filed within the one-year time limit set out in the Illinois Tort Immunity Act. Given that concession, Savory does not address Defendants' motion regarding those state-law torts. *See infra* at 25.

## PLAINTIFF'S COMPLAINT

In 151 paragraphs, Savory's complaint sets out in rich detail how Defendants' misconduct violated his rights and caused his wrongful conviction. Instead of reiterating that extensive narrative, Savory incorporates his allegations here by reference. *See* Dkt. 1 (Complaint). He discusses the complaint in detail below as necessary to respond to the Defendants' particular arguments. At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## ARGUMENT

### I. THIS COURT SHOULD NOT CONSIDER DEFENDANTS' REFERENCES TO DISPUTED FACTS IN RESOLVING THE MOTION

It is important to note at the outset that Defendants' motion relies on disputing the facts in Savory's complaint. Throughout their brief, Defendants cite to Illinois judicial opinions in Savory's criminal case and to exhibits attached to their motion, and interpreting those sources in their own favor, Defendants use them to contest factual allegations in Savory's complaint. That approach is not permissible. The "facts" on which Defendants rely are disputed, directly contradicted by the complaint, and not subject to judicial notice. They must be disregarded in deciding the motion.

Courts are generally limited to the complaint when reviewing a motion to dismiss. *General Elec. Captial Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). If materials outside the complaint are considered, the motion must be treated as one under Rule 56. FED. R. CIV. P. 12(d); *Global Relief v. New York Times. Co.*, 2002 WL 31045394, at *4 (N.D. Ill. 2002). There is an exception when courts take judicial notice of matters of public record, but they may do so only when those matters "are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citing *General Elec. Capital*, 128 F.3d at 1081).

For a fact to be judicially noticed, it must be beyond dispute. *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). As a result, factual findings made by other courts are generally not subject to judicial notice. *General Elec. Capital*, 128 F.3d at 1082 n.6 ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."); *Global Relief*, 2002 WL 31045394, at *4 ("Typically, [judicial] notice of a court order is limited to the purpose of recognizing the judicial act or litigation, but not for the truth of the matters asserted in the document.").

If facts from outside of a complaint are subject to dispute, those facts cannot be used to contradict a complaint or to decide a motion under Rule 12(b)(6). *General Electric Capital*, 128 F.3d at 1076-83; *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771-72 (N.D. Ill. 2011). The Seventh Circuit has reversed dismissals under Rule 12(b)(6) where contradictory facts from outside of the complaint were considered. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). The factual questions of whether destroyed evidence was material to Savory's criminal proceedings, whether Savory's involuntary confession was used against him at various stages of his criminal case, and others like it are all beyond judicial notice because they are strenuously contested in this case. Where Defendants rely on their own facts from external documents and findings in judicial opinions to contest the facts in Savory's complaint, those facts should be disregarded.[2]

The rules that apply to Savory at this stage are different. "A plaintiff . . . has much more flexibility in opposing a Rule 12(b)(6) motion," and "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky*, 675 F.3d at 745 n.1 (7th Cir. 2012) (collecting cases). Savory elaborates on certain factual allegations in this brief.

[2] This does not mean the Court must ignore opinions from Savory's criminal case entirely. It may take judicial notice of dates on which judicial actions occurred. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

## II. SAVORY'S FEDERAL CLAIMS ACCRUED WITH HIS PARDON AND ARE TIMELY FILED

Defendants assert a number of Savory's section 1983 claims accrued more than two years before he filed this lawsuit, making them untimely under the applicable two-year statute of limitations in Illinois. In particular, Defendants assert that Savory's claim that Defendants forced him to confess involuntarily accrued and should have been filed in 1980. Motion at 4-6. In addition, they argue that Savory's due process claims regarding Defendants' fabrication, suppression, and destruction of evidence accrued in 2011. Motion at 12-14.

"The Seventh Circuit has cautioned that 'because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6).'" *Mercola v. Abdou*, 2015 WL 3545414, at *3 (N.D. Ill. June 5, 2015) (quoting *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)). "'Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).'" *Id.* (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). Savory's complaint comes nowhere near establishing a limitations defense on its face. On the contrary, Savory alleges that he was arrested, prosecuted, and convicted based on a fabricated and involuntary confession used in his criminal case and because of Defendants' fabrication, suppression, and destruction of material evidence. Dkt. 1 ¶¶ 76-77. Savory alleges that the conviction was extant until he was pardoned on January 12, 2015, *id.* ¶¶ 86-87. Any limitations defense plainly fails given these allegations.

Regardless, Defendants' limitations arguments also fail on the merits, as they depend on significant misinterpretations of the law governing accrual of section 1983 claims.

### A. Federal Accrual Principles Dictate That Claims Concerning Wrongful Convictions Accrue When the Conviction Is Ultimately Set Aside

The accrual of claims under section 1983 is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In the line of cases that includes *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Heck v. Humphrey*, 512

U.S. 477 (1994), and *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court has examined "the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions," *Skinner v. Switzer*, 562 U.S. 521, 525 (2001). These precedents dictate that when a claim implies the invalidity of a state conviction, habeas corpus is the exclusive remedy, and a claim for damages under section 1983 cannot accrue until the conviction has been invalidated. *Preiser*, 411 U.S. at 500; *Heck*, 512 U.S. at 483-87; *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007). This rule is based on concerns of federal-state comity and the related principle that federal actions should not interfere with, litigate in parallel, or re-litigate state proceedings. *Preiser*, 411 U.S. at 484-90; *Heck*, 512 U.S. at 484-85; *see also Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005).

Accordingly, before bringing a claim under section 1983 challenging a state conviction, "a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, *expunged by executive order*, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (emphasis added). "[Section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" may not be brought while the conviction is intact. *Id.* at 486.

To determine whether *Heck* delays accrual of a particular civil claim, courts ask whether a judgment in the plaintiff's favor on that claim would necessarily imply the invalidity of an extant conviction or confinement. *Id.* at 487. This fact-specific inquiry turns on the allegations in the plaintiff's case. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). As discussed below, the allegations in Savory's complaint leave no question that Savory's federal claims would have implied the invalidity of his conviction if they had been filed at any time before his pardon.

Savory's federal claims at base contend that Defendants' misconduct was the sole cause of his wrongful conviction. As a result, Savory was required to wait until his conviction was set aside to bring those claims. *Alston v. Madison*, 853 F.3d 901, 910 (7th Cir. 2017) ("A plaintiff cannot recover damages in a § 1983 suit if a judgment in the plaintiff's favor would necessarily imply the invalidity of a prior

conviction.") (internal quotations and citations omitted); *Haywood v. Hathaway*, 842 F.3d 1026, 1029 (7th Cir. 2016) ("[A] challenge is not possible as long as it is inconsistent with the validity of a conviction[.]"); *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("[A]ny claims based on proceedings in court" are governed by *Heck*, and "*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon"); *American Safety Cas. Ins. Co. v. Waukegan*, 678 F.3d 475, 477 (7th Cir. 2012) ("[C]laims related to wrongful conviction do not accrue until the conviction has been invalidated[.]"); *Rodriguez v. Cook County*, 664 F.3d 627, 630 (7th Cir. 2011) ("[W]hen a person has been convicted and imprisoned, a § 1983 claim that is inconsistent with the validity of that conviction . . . does not accrue until the conviction has been set aside in some other manner."); *National Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010) ("[F]ederal law claims for unconstitutional conviction, imprisonment, and denial of due process . . . challenge the validity of [the plaintiff's] conviction" and do not accrue until the conviction is set aside); *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) (claims concerning involuntary confession used in a criminal case "arose only after [the plaintiff's] criminal conviction was set aside"); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008) (*Heck* "holds that the [section 1983] plaintiff may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon.").

Savory's pardon set his conviction aside and caused his section 1983 claims challenging that conviction to accrue, as the Seventh Circuit and courts in this District have recognized in analogous circumstances. *See, e.g.*, *Newsome v. McCabe*, 256 F.3d 747, 749 (7th Cir. 2001) ("[A] claim based on wrongful conviction and imprisonment did not accrue until the pardon[.]"); *Patterson v. Burge*, 328 F. Supp. 2d 878, 902 (N.D. Ill. Aug. 5, 2004) (pardon triggered claim accrual in a wrongful conviction case); *Hobley v. Burge*, 2004 WL 1243929, at *7 (N.D. Ill. June 3, 2004) (due process and other claims concerning wrongful conviction were postponed by *Heck* until the pardon); *Orange v. Burge*, 2005 WL 742641, *6 (N.D. Ill. Mar.

30, 2005) ("[U]nder *Heck*, [the plaintiff] would have been barred from bringing his § 1983 claims until [the governor's] pardon in January 2003 if a determination of [the plaintiff]'s claims would have required the evaluating court to declare his conviction or sentence to be invalid."). Defendants' arguments do not confront this uniform body of law whatsoever.

### B. Savory's Due Process Claims Accrued with His Pardon

Defendants argue that Savory's due process claims accrued in 2011, when his parole ended. Motion at 7-9. This argument misunderstands Supreme Court and circuit precedents, which dictate that a section 1983 suit challenging a conviction does not accrue until the conviction is invalidated.

Savory's due process claims concern allegations that false evidence fabricated by the Defendants—including Savory's confession, statements of third-party witnesses implicating Savory, police reports, and physical evidence—formed the entire basis of Savory's prosecution and convictions. Dkt. 1 ¶¶ 5-7, 22, 51-52, 55-71, 76-77. In addition, Savory alleges that Defendants suppressed and destroyed exculpatory and impeachment evidence—including the circumstances of the confession and interrogation, their interactions with state's witnesses, evidence gathered from alternative suspects, and physical evidence—that was central to his criminal case and without which he could not contest the charges against him. *Id.* There is no way to read Savory's due process allegations as consistent with a criminal conviction. *See Avery v. City of Milwaukee*, 847 F.3d 433, 439-40 (7th Cir. 2017) ("Falsified evidence will *never* help a jury perform its essential truth-seeking function. That is why convictions premised on deliberately falsified evidence will always violate the defendant's right to due process.").

All of the cases cited above hold that such claims cannot be brought until the conviction is set aside. Indeed, *Heck* itself concerned due process claims, like Savory's, which challenged the legality of a conviction, and the Court held that the accrual of such claims was delayed until the conviction had been invalidated. 512 U.S. at 478-80, 485-87. As the Seventh Circuit put it in *Dominguez*, "A § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction

is set aside. Otherwise, that civil claim would imply the invalidity of the outstanding conviction and would thus constitute a collateral attack on the conviction through an impermissible route." 545 F.3d at 588. Savory's due process claims accrued with the pardon.

Contradicting these established principles, Defendants contend Savory's due process claims accrued when his parole terminated following his release from prison. Defendants' logic goes like this: Savory no longer had access to federal habeas once his parole terminated, and so *Heck*'s bar was lifted at that moment, and Savory was then free to bring his section 1983 claims. Motion at 7-10. This argument distorts Supreme Court and Seventh Circuit cases.

Defendants first cite Justice Souter's concurrence in *Heck*, which argued that the majority's holding should not apply in cases brought by former prisoners who could not bring habeas challenges. Motion at 8-9. But as Defendants acknowledge in their brief, this proposal was expressly rejected by the *Heck* majority, 512 U.S. at 490 n.10 ("We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."). Though Justice Souter repeated his view in *Spencer v. Kemna*, 523 U.S. 1, 19-21 (1998), his opinion there again did not constitute a holding of the Court.[3] On the question whether release from custody lifts the *Heck* bar, the Supreme

[3] *Spencer* raises a separate concern about Defendants' premise that habeas is unavailable to individuals challenging their prior convictions after release from prison. The *Spencer* Court considered whether a habeas petition challenging a revocation of parole, which led to a lengthier incarceration, was mooted by the release of the habeas petitioner from prison. 523 U.S. at 7-8. The Court decided that the habeas petition was moot because the petitioner was not challenging his conviction, just his revocation of parole, the consequence of which (his imprisonment) had already come to an end. *Id.* at 14. Justice Souter wrote in concurrence that the petitioner should have a federal recourse in the form of a damages suit since he could no longer challenge the revocation through habeas. *Id.* at 19-21. All of the Justices agreed, however, that they were not considering a situation where a person convicted of a crime is released and then seeks to maintain a habeas challenge to the conviction itself. The Court reminded that in those situations it had "been willing to presume that a wrongful criminal conviction has continuing collateral consequences," such that the habeas petition would not be moot. *Id.* at 7-8. The Seventh Circuit applies this rule in cases where an extant conviction is challenged. *E.g.*, *Eichwedel v. Curry*, 770 F.3d 275, 279 (7th Cir. 2012) ("[W]e presume that a criminal conviction has collateral consequences," which prevent a habeas action from becoming moot). Put simply, it is not at all clear that the premise of Defendants' argument is correct. They do not cite any case supporting their view that habeas would have been unavailable to Savory at the termination of his parole. It is not necessary to resolve that question to decide the accrual issue—either way the conviction had to be set aside for Savory to bring his section 1983 claims.

Court's last statement on the issue is in *Heck*, which specifically states that the bar to a civil suit remains if a conviction is in place after incarceration comes to an end. 512 U.S. at 490 n.10.

Defendants next discuss *Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012), a case in which the Seventh Circuit rejected the precise position Defendants take here, holding "that *Heck* applies where a § 1983 plaintiff could have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing." *Id.* at 436. Defendants' contention that Savory could have just waited until termination of his parole and then filed under section 1983 seeking damages for his wrongful conviction is expressly contradicted by *Burd* and other Seventh Circuit cases. Just last year the Court reiterated that *Burd* "holds that a prisoner cannot avoid *Heck* by waiting until the sentence expires and it is too late to file a collateral attack[.]" *Haywood*, 842 F.3d at 1030. Instead, consistent with the discussion above, something more is needed—relief from the conviction itself.

Defendants also cite *Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006), and *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), which also do not support their position. *Simpson* and *DeWalt* state the uncontroversial rule that when a section 1983 claim does not challenge a conviction or the fact of confinement in the first place, then *Heck* does not bar the claim. *Simpson*, 450 F.3d at 306-07 (*Heck* does not bar section 1983 challenge to prison disciplinary segregation or restrictions on recreation); *DeWalt*, 224 F.3d at 616-18 (*Heck* does not bar a section 1983 challenge to prison conditions of confinement—there, loss of a prison job). These cases do not stand generally for a rule that anyone who is no longer in custody can challenge an extant conviction by way of a section 1983 suit. On the contrary, they confirm that *Heck* does not bar section 1983 claims in situations where habeas was never an available avenue for the type of relief sought in the first place. *See Hadley v. Quinn*, 524 Fed. App'x 290, 293 (7th Cir. 2013). Neither *Simpson* nor *Dewalt* has any application here, where the section 1983 suit challenges a conviction.

Finally, further support for Savory's position is found in *Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017), a case not mentioned by Defendants. The plaintiff in *Whitfield* filed a section 1983 claim

following release from prison, alleging his rights were violated when he was held in prison too long after good-time credits were improperly revoked. 852 F.3d at 658. The Seventh Circuit concluded that this type of claim was not barred by *Heck*. *Id.* The Court so held not because the plaintiff had been released from prison, but instead because of the type of relief that the plaintiff sought after release.

Specifically, the *Whitfield* Court explained a dichotomy in constitutional claims critical to the question whether *Heck* bars a claim after a person is released from custody. On the one hand, the Court recognized that a plaintiff (as in *Burd*) who brings a claim attacking a conviction must "demonstrate his injury by establishing the invalidity of the underlying *judgment*" before seeking damages for that injury under section 1983. *Id.* at 662-63. In that situation, *Heck* bars the claim whether the plaintiff has been released from custody or not, because the plaintiff's damages claim depends on a showing that the conviction is invalid. *Id.* On the other hand, a plaintiff (as in *Whitfield*) who brings a claim seeking damages for an injury suffered separate from the conviction itself (there a longer detention because of a revocation of good-time credit) need not demonstrate that the criminal judgment is invalid before seeking damages for that injury. *Id.* In the latter situation, release from custody sets aside the *Heck* bar because the section 1983 suit does not require showing that the conviction is invalid and the suit is no longer seeking speedier release from custody, given that the plaintiff has been release already. *Id.*

*Whitfield* in no uncertain terms confirmed that claims attacking extant convictions accrue only once the conviction is set aside, reiterating that "it would undermine *Heck*—and worse, the fundamental line between habeas corpus and civil rights actions dating back to *Preiser*—to allow a plaintiff who had not been precluded by some sort of legal impediment to skirt the *Heck* bar by waiting to bring his section 1983 action until habeas corpus was no longer available." *Id.* at 662.

Established law provides that Savory's section 1983 due process claims could not have been brought until Savory's conviction was set aside. That happened when Savory was pardoned, not when he was released on parole. Savory's due process claims are timely.

### C. Savory's Involuntary Confession Claims Accrued with His Pardon

The same accrual rule applies to Savory's claim that Defendants forced him to incriminate himself involuntarily, in violation of the Fifth and Fourteenth Amendments.[4] Numerous cases hold that a section 1983 claim alleging that a prosecution or conviction was caused by an involuntary confession necessarily impugns the conviction and can only be brought after the conviction is set aside. *See Moore*, 771 F.3d at 446 ("[A]ny claims based on proceedings in court" are subject to *Heck*); *Matz v. Klotka*, 769 F.3d 517, 531 (7th Cir. 2014) (Fifth Amendment claim *Heck* barred); *Dominguez*, 545 F.3d at 589 (holding that Fifth Amendment claims "arose only after [the plaintiff's] criminal conviction was set aside").[5] Savory's self-incrimination claim therefore accrued with his pardon as well.

Defendants argue in a single paragraph that the Fifth Amendment claim accrued when Savory's first conviction was reversed on direct appeal in 1980. Motion at 5-6. This cursory accrual argument is insufficient to warrant a response, *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003), let alone dismissal on the basis of an affirmative defense at this stage of the case, *Reiser*, 380 F.3d at 1030.[6] Regardless, Defendants' argument that Savory's self-incrimination claim accrued in 1980 depends on two premises, neither of which is correct. Namely, (1) that Savory's false confession was "used in a criminal

---

[4] Savory's claim that use of his confession in the criminal case violated the Fifth Amendment is related to but different than his claim that Defendants fabricated a confession attributed to him in violation of due process. *Compare Chavez v. Martinez*, 538 U.S. 760 (2003), and *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006) (discussing the former claim), *with Avery*, 847 F.3d at 439-40 (discussing the latter). Defendants do not contend that either type of claim is implausibly pleaded. They just contend that both claims are untimely.

[5] *See also Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 965 (N.D. Ill. 2015) (citing *Moore*, *Chavez*, and *Sornberger*, and concluding that "[b]ecause Fifth Amendment self-incrimination claims occur 'in court' by definition, . . . they are eligible for deferred accrual under *Heck*"); *Taylor v. City of Chicago*, 80 F. Supp. 3d 817 (N.D. Ill. 2015); *Phillips v. City of Chicago*, 2015 WL 5675529, at *3-4 (N.D. Ill. Sept. 24, 2015); *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1188 (N.D. Ill. 2013); *Wilson v. O'Brien*, 2011 WL 759939, at *5-7 (N.D. Ill. Feb. 25, 2011); *Tillman v. Burge*, 813 F. Supp. 2d 946, 969-71 (N.D. Ill. 2011); *Hill v. City of Chicago*, 2009 WL 174994, at *5-6 (N.D. Ill. Jan. 26, 2009); *Orange*, 2005 WL 742641, at *5-8; *Howard v. City of Chicago*, 2004 WL 2397281, at *7 (N.D. Ill. Oct. 25, 2004); *Patterson*, 328 F. Supp. 2d at 897.

[6] Defendants' argument also confirms Savory's view of claim accrual in this case. Defendants state first in this section of their brief that Savory's self-incrimination claim accrued when the confession was used in Savory's case, *see* Motion at 5 (citing *Chavez*, 538 U.S. at 767), by which they must mean that the constitutional violation was not complete until the confession was used in the criminal case, which is correct, *Sornberger*, 434 F.3d at 1026-27. Next, Defendants argue that *Heck* delays accrual of that claim until Savory's conviction was set aside, *see* Motion at 5 (citing *Moore*, 771 F.3d at 446). That accrual argument directly contradicts Defendants' other accrual arguments discussed above.

case," *Chavez*, 538 U.S. at 767, only in his first criminal trial, and (2) that Savory's claims relating to his first trial accrued with the reversal of his first conviction. Savory address each point in turn.

### 1. Savory's Confession Was Used Throughout His Criminal Case

Defendants' contention that Savory's confession was used only during his first criminal trial is again an attempt to contest the facts in Savory's complaint, based on Defendants' interpretation of judicial opinions. As explained above, Defendants cannot do this in a motion to dismiss. *See supra* at 2-3. Savory has pleaded in great detail that Defendants coerced an involuntary confession from him, Dkt. 1 ¶¶ 31-55, and used that confession to initiate the case, *Sornberger*, 434 F.3d at 1024-27, and to convict him in his criminal trials, *Chavez*, 538 U.S. at 767. Defendants are not entitled to contest these facts.

But even considering the judicial opinions that Defendants cite, which this Court should not do, those opinions properly interpreted in fact support the allegations in Savory's complaint. Following Savory's first conviction, the Illinois appellate court reversed and remanded after concluding that Savory's involuntary statements given during Defendants' interrogation should not have been introduced at Savory's criminal trial. *People v. Savory*, 403 N.E.2d 118, 122-24 (Ill. App. Ct. 1980). Following Savory's second trial and conviction, the Illinois appellate court again found that Savory's involuntary statements given during Defendants' interrogation should not have been introduced at Savory's trial. *People v. Savory*, 435 N.E.2d 226, 231 (Ill. App. Ct. 1982). The opinion on appeal from the second conviction states repeatedly that Savory's involuntary statements were used against Savory at his second criminal trial, as Savory alleges. *Id.* at 228-31. In that second appeal, the appellate court concluded that the introduction of the statements was harmless, in light of the testimony provided by the Ivys at trial. *Id.* at 231-32.[7] There is no support for Defendants' factual contention that Savory's false confession was limited to his first

[7] This is a good illustration of a reason courts do not judicially notice facts in judicial opinions: the conclusion here that the introduction of Savory's involuntary statements at his second trial was harmless is based on the premise that the Ivys' testimony was truthful. Savory alleges and will prove that the Ivy's testimony was fabricated entirely by Defendants, such that it could never reasonably support a conclusion that introduction of other evidence was harmless.

criminal trial, and regardless that factual argument must be rejected as improper at this stage. Defendants' argument that Savory's coerced confession claim accrued in 1980 can be rejected on that basis.

**2. Savory's Involuntary Confession Claims Concerning His First Trial Did Not Accrue When His First Conviction Was Reversed**

But even if Defendants were correct that Savory's self-incrimination claim was limited to his first trial, that claim would not have accrued with the reversal of his first conviction. It, too, would have accrued with Savory's pardon.

At all times from his arrest until his pardon, Savory either faced confinement on murder charges, conviction on those charges, or both. The charges on which Savory was tried in his first case were the same charges that he faced in his second case. If Savory had brought this section 1983 claim at any point during his criminal case before the pardon, it would have impugned confinement or conviction, habeas corpus would have been the exclusive avenue for redress, and the section 1983 claim would not have been cognizable.

Consistent with *Heck* and other cases in that line, Savory's constitutional challenges to his state-court proceedings could not have been brought under section 1983 between his first and second criminal trials. *Preiser*, 411 U.S. at 476-77 (noting that habeas is the exclusive remedy, even in the absence of a conviction, where a person is "imprisoned prior to trial on account of a defective indictment against him") (quoting *Ex parte Royall*, 117 U.S. 241 (1886)); *Heck*, 512 U.S. at 486 (nothing that accrual is delayed for section 1983 actions "that necessarily require the plaintiff to prove the unlawfulness of his conviction *or confinement*") (emphasis added).

*Heck*'s reference to a "revers[al] on direct appeal," 512 U.S. at 486-87, does not contemplate that section 1983 claims will accrue whenever a state criminal conviction is reversed on evidentiary grounds and a new trial is ordered. In that situation, "even after an appellate court has remanded a criminal case for retrial, the *Heck* bar is not lifted until and unless the retrial ends favorably." *Payano v. Potter*, 554 Fed. App'x 522, 524-25 (7th Cir. 2014) (citing *Julian v. Hanna*, 732 F.3d 842, 845 (7th

Cir. 2013)). It is only in the cases of a reversal that prevents further pursuit of the criminal case that the *Heck* bar is immediately lifted. *See Rodriguez*, 664 F.3d at 630 (if a conviction is reversed because the evidence is insufficient and double jeopardy prevents retrial, then section 1983 claims accrue).

In cases like Savory's that involve reversals and retrials, courts conclude that the *Heck* bar applies until the prosecution is finally terminated and the conviction is set aside. *Armstrong v. Norsetter*, 2016 WL 4087325, at *9-10 (W.D. Wis. July 29, 2016) (citing *Julian*, 732 F.3d at 845; *Brooks v. Ross*, 578 F.3d 574, 578-79 (7th Cir. 2009); *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001)).

## III. SAVORY'S FOURTH AMENDMENT CLAIM FOR DETENTION WITHOUT PROBABLE CAUSE AFTER LEGAL PROCESS IS VIABLE

Defendants assert that Savory's Fourth Amendment claim concerning illegal seizure after legal process fails to state a claim. Precisely this claim was just recognized in *Manuel v. City of Joliet*, 137 S. Ct. 911, 920-22 (2017). Defendants' argument that Count III of the complaint is doomed because it includes the label "malicious prosecution" lacks merit.

At the time Savory pleaded this claim, circuit precedent held that a malicious prosecution claim in Illinois must be brought under state law. *Manuel v. City of Joliet*, 590 Fed. App'x 641, 642-43 (7th Cir. 2015). The Seventh Circuit did not recognize a Fourth Amendment right to be free from pretrial detention that is not supported by probable cause. *Id.* Savory acknowledged these authorities in a footnote he attached to Count III. Dkt. 1 at 20. Since Savory filed his complaint, however, the Supreme Court in *Manuel* overturned this precedent and confirmed that a Fourth Amendment claim for unlawful post-arrest, pretrial detention exists, but it declined to address whether such a claim resembles malicious prosecution. 137 S. Ct. at 920-22.

Though it is true that *Manuel* did not label this Fourth Amendment claim a "malicious prosecution" claim, the fact that Savory did so in his complaint does not doom this claim. At bottom, Savory asserts a claim that he was detained without probable cause following legal process. He is not even

required to plead legal theories, *Streckenbach v. Vandensen*, 2017 WL 3585074, at *1 (7th Cir. Aug. 21, 2017), let alone predict how the Supreme Court will style a particular claim. Savory plausibly pleaded the type of Fourth Amendment claim at issue in *Manuel*. *See Jackson v. City of Peoria*, 2017 WL 1224526, at *9 (C.D. Ill. Mar. 31, 2017) (allowing similarly pleaded claim to proceed, notwithstanding a "malicious prosecution" label affixed to the claim).[8]

## IV. SAVORY'S DUE PROCESS CLAIMS REGARDING DESTRUCTION OF EVIDENCE ARE PLAUSIBLY PLEADED

Defendants argue that Savory has not plausibly pleaded claims regarding destruction of evidence. In particular, they contend he has not plausibly alleged (1) that Defendants acted in bad faith by destroying evidence; and (2) that the destroyed evidence would have been relevant to Savory's claims of innocence. Motion at 10-12. These arguments fail.

### A. Savory Plausibly Pleads That Defendants Acted In Bad Faith Destroying Evidence

First, Savory has pleaded facts to support an inference that Defendants acted in bad faith when they destroyed potentially exculpatory evidence. The complaint is full of detailed examples of the ways in which Defendants were willing to manipulate and falsify evidence in order to secure Savory's wrongful conviction: Defendants interrogated Savory for more than 31 hours when he was a 14-year-old boy, subjecting him to extreme psychological and physical abuse, Dkt. 1 ¶¶ 31-51; they deprived Savory of food and sleep during his interrogation, *id.* ¶¶ 35-36; they stripped him naked and plucked hairs from his body, *id.* ¶ 10; they created false reports relating to their interrogation, fabricating false statements and attributing them to Savory, *id.* ¶¶ 52, 68; after the interrogation, Defendants manipulated and instructed witnesses to falsely implicate Savory in the crime, including the Ivy siblings, *id.* ¶¶ 58-60; and the Defendants concealed the misconduct they committed during the course of the investigation, *id.* ¶ 69.

---

[8] Although the court in *Walker v. White*, 2017 WL 2653078, at *5 (N.D. Ill. June 20, 2017), took issue with the "malicious prosecution" label, it simply granted leave to re-plead the claim with different wording. The *Walker* court correctly saw no reason to dismiss the claim with prejudice, which is what Defendants seek here.

These allegations, taken together, easily support an inference that Defendants acted with a specific intent to frame Savory for a crime he did not commit, and an inference that they knowingly falsified and manipulated evidence to achieve that goal.

Against that backdrop, it is more than plausible that Defendants' alleged destruction of physical evidence was done in bad faith. *See Armstrong v. Daily*, 786 F.3d 529, 547 n.6 (Armstrong's allegation of a decades-long course of events in which state actors tried to frame him for rape and murder was sufficient to plausibly allege bad faith destruction of evidence).

Defendants also argue that Savory has not plausibly alleged that "it was one of the Defendant Officers as opposed to any other person who might have lost the evidence." Motion at 12. This argument lacks merit. First, Savory does not allege that the evidence was merely "lost" by an unknown person. He alleges that the evidence was intentionally destroyed by Defendants. Dkt. 1 ¶¶ 56, 57, 64, 108, 109. Defendants are free to argue at trial that the evidence was merely "lost," but they are not entitled to an inference at the pleading stage that this evidence was innocently "lost." Second, contrary to Defendants' assertion, Savory specifically alleges that these Defendants investigated the crime and gathered the physical evidence at issue from the scene. *Id.* ¶ 22. It is an appropriate inference to draw that Defendants then took and maintained primary custody of the evidence, as investigating police agencies generally do. In addition, as explained above, Defendants acted generally with the intent to frame Savory for a crime he did not commit and they manipulated other evidence in furtherance of that goal. Based on these factual allegations, a plausible inference can be drawn that the named Defendants had motive, means, and an opportunity to destroy the evidence and therefore were the ones who did destroy it. If Defendants plan to blame others for the missing evidence, they are free to do so, but Savory's pleading is sufficient.

### B. Savory Plausibly Pleads That the Evidence At Issue Was Potentially Exculpatory

Defendants next argue that Savory has not plausibly alleged that the destroyed evidence would have been potentially exculpatory. Motion at 12. This argument completely ignores the detailed allegations in Savory's complaint about exactly how each piece of evidence at issue was potentially exculpatory. Dkt. 1 ¶¶ 63-66. Instead of engaging with Savory's pleading, Defendants point the Court to decisions of the Illinois Appellate Court, *People v. Savory*, 722 N.E.2d 220, 225-26 (Ill. App. Ct. 1999), and the Illinois Supreme Court, *People v. Savory*, 756 N.E.2d 804, 810-12 (Ill. 2001), which discuss some of these pieces of evidence. These decisions do not warrant dismissal.

First and foremost, the Court's review at the motion to dismiss stage is properly confined to facts contained within the pleadings. As discussed above, *supra* at 2-3, the Court may take judicial notice of undisputable facts that are readily ascertainable in other legal opinions, but Defendants rely on these Illinois judicial opinions for much more. They ask this Court to adopt their interpretation of the disputed judicial findings in those opinions as facts to be taken as true—indeed, to be taken as trumping Savory's well-pleaded complaint—for purposes of their motion to dismiss. And they ask the Court to do so knowing full well that the judicial opinions that they cite are the product of the very criminal proceeding that Savory alleges was entirely corrupted by their misconduct. This is not a proper argument or use of judicial notice at the pleading stage. If facts from outside of a complaint are subject to dispute, then those facts cannot be used to contradict a complaint and may not be considered in deciding a motion to dismiss under Rule 12(b)(6). *Jacobs*, 215 F.3d at 765 (reversing dismissal under 12(b)(6) where facts outside of the complaint supporting defendants' view of the case were considered); *Hennessy*, 69 F.3d at 1354 ("In order for a fact to be judicially noticed, indisputability is a prerequisite.").

Making matters worse, even considering the cases Defendants that cite (which the Court should not do in resolving the motion), those cases do not support the propositions for which

Defendants offer them. Although the 1999 appellate court opinion stated that the blood-stain and fingernail evidence were not "materially relevant" to Savory's claims of innocence, the 2001 Illinois Supreme Court opinion concluded that the lower court applied the wrong legal standard. *Savory*, 197 Ill.2d at 214. Applying the correct standard, the Illinois Supreme Court determined that the blood-stain evidence (and that evidence only—the fingernail scraping issue was not brought before the Supreme Court) was not materially relevant to Savory's claim of innocence. *Id.* at 214-15. In order to reach that conclusion, the Supreme Court undertook its own review of the entire trial record in Savory's criminal case, comparing the State's evidence of guilt—construed favorably to the State—to the potentially exculpatory blood-stain evidence. *Id.* On that record, the Court determined that the blood stain evidence played only a minor role in the State's case against Savory and was therefore not "materially relevant" to Savory's claim of innocence.[9]

This Court must decide a different legal question and it must do so on a different factual record. The question here is whether Savory has plausibly alleged that Defendants destroyed potentially exculpatory evidence in bad faith. Savory points to three specific pieces of evidence (whereas the Illinois Supreme Court considered only one) and succinctly explains how each was potentially exculpatory. Savory's pleading is sufficient. To the extent that an Illinois court made factual determinations about the significance of this evidence that are inconsistent with allegations pleaded in Savory's complaint, those factual determinations should not be considered by this Court.

### C. Savory's Claim Is Not Defeated By His 32-Year Wait For A DNA Testing Order

Finally, Defendants advance an argument that they are somehow entitled to dismissal because 32 years passed between Savory's trial and the date that a state court ordered DNA testing. This argument misses the mark. First, Defendants have not established when they destroyed the evidence at issue. They

[9] Defendants notably do not point this Court to a later contrary judicial finding, in which the Illinois trial court found in 2013 that the evidence at issue was in fact "materially relevant" to Savory's claims of innocence, notwithstanding the 2001 Supreme Court decision. *See* Doc. 71-2 (Order granting DNA testing).

are certainly not entitled to an inference at this stage that they preserved it for 32 years (or any amount of time for that matter) following Savory's trials. Second, the fact that it took 32 years for Savory to get an order for DNA testing does not immunize Defendants' misconduct. Defendants are free to argue at trial that they preserved the evidence for a "reasonable" amount of time and that they did not act in bad faith, but the Court must decline Defendants' invitation to draw those inferences in their favor. At this stage, the Court must accept Savory's well-pleaded facts as true: that the evidence could have exculpated Savory and that Defendants destroyed it in bad faith. The destruction of evidence claim is sufficiently alleged.

## V. SAVORY'S DUE PROCESS CLAIMS REGARDING SUPPRESSION OF EVIDENCE ARE PLAUSIBLY PLEADED

In a cursory argument, Defendants contend that Savory's due process claims concerning suppression of evidence relating to the Ivys should be dismissed. Motion at 12-14.[10] Defendants seem to be making two arguments. First, they suggest that Defendants did not suppress evidence relating to the Ivys because Savory knew that the Ivys were lying. Motion at 13. This exact same argument was just rejected by the Seventh Circuit in *Avery v. City of Milwaukee*, 847 F.3d 433, 443-444 (7th Cir. 2017), a decision that Defendants do not acknowledge. Second, Defendants appear to argue in a single sentence that the suppressed impeachment evidence regarding the Ivys was discoverable through an exercise of reasonable diligence. This argument perfunctory and is forfeited at this stage of the case. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (holding that an undeveloped argument is

[10] Defendants' argument for dismissal of Savory's due process claims in this section of their brief is actually quite limited, and in no circumstance would justify dismissal of all of Savory's fabrication and suppression claims. First, Defendants do not address the fact that Savory's due process claims regarding the Ivys consist of both a fabrication component (Defendants actually fabricated the Ivys' statements and those statements were used to convict Savory at trial) and a suppression component (Defendants suppressed impeachment evidence regarding their interrogations of and interactions with the Ivys). These are distinct claims, *see Petty v. City of Chicago*, 754 F.3d 416, 421-24 (7th Cir. 2014), and with respect to the Ivys, Defendants argue only for dismissal of suppression claims, they say nothing about the fabrication. Second, Defendants do not make any argument anywhere in their brief for the dismissal of any fabrication of evidence theory, apart from their timing arguments. Third, Defendants do not make any argument for dismissal of Savory's suppression due process claims concerning suppression of physical evidence, evidence implicating alternative suspects, and other *Brady* issues discussed in the complaint. Accordingly, Savory's due process claims will survive in large part no matter what the Court decides about suppression of information about the Ivys.

forfeited). It also, at best, depends on a dispute of fact that cannot be resolved in Defendants' favor at this stage. *Virnich*, 664 F.3d at 212. Defendants are also incorrect on the law governing the reasonable diligence analysis—where police fabricate statements for state's witnesses to present, and those state's witnesses repeat the lies at the criminal trial, there is no plausible argument that impeachment information could have been discovered by reasonable diligence. *See*, *e.g.*, *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001); *Hampton v. City of Chicago*, 2017 WL 2985743, at *22 (N.D. Ill. July 13, 2017); *Jimenez v. City of Chicago*, 830 F. Supp. 2d 432, 444-45 (N.D. Ill. 2011). Savory alleges that Defendants suppressed ample and critical evidence that he could have used to impeach the Ivys, Dkt. 1 ¶¶ 58-61 and Defendants' arguments to dismiss that claim should be rejected.

## VI. SAVORY'S FAILURE TO INTERVENE CLAIMS ARE PLAUSIBLY PLEADED

Defendants argue that Savory's failure to intervene claim must also be dismissed. Motion at 14-15. To the extent this argument is based on the arguments for dismissal of Savory's other constitutional claims, *see id.* at 14, those arguments should be rejected for the reasons described above. To the extent this argument is based on a contention that Savory has failed to allege the opportunity each Defendant had to intervene to prevent the violation of Savory's constitutional rights, it lacks merit.

Under Seventh Circuit law, an allegation explicitly directed at all or a particular subgroup of defendants is sufficient to plead personal involvement after *Twombly*, even if each defendant comprising the group is not named individually in each separate paragraph. *Brooks*, 578 F.3d at 582 (finding a complaint alleging that all members of a group of defendants engaged in misconduct unobjectionable); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that a prisoner's statement that he repeatedly alerted a group of medical personnel to his medical condition and they did nothing in response, causing injury, stated a claim so long as the complaint at some point identified all of the medical personnel involved); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (noting that where a plaintiff has been injured "as the consequence of the actions of an unknown member of a collective body,

identification of the responsible party may be impossible without pretrial discovery" and that this is "not by itself a proper ground for dismissal").Savory has alleged which officers were involved in the investigation and, where possible, which had a supervisory role. Dkt. 1 ¶ 14. Without discovery, Savory does not know with certainly which particular officers took which particular actions, nor does he know with certainly which officers had an opportunity to intervene to stop the constitutional violations from occurring, but this is not grounds for dismissal.

There is nothing preventing each of the named Defendants from answering each allegation in the Complaint. Each individual is completely free to admit, deny, or claim lack of knowledge as to every single allegation Savory has pleaded, consistent with that particular Defendant's view of the truth. For that reason, numerous courts in this district have denied motions to dismiss asserting analogous "group pleading" arguments. *See Vandenburgh v. Ogden*, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016) (rejecting the argument that the plaintiff's reference to the "Defendant Officers" collectively or to "one or more Defendant Officers" engaging in the misconduct required dismissal); *Koh v. Graf*, 2013 WL 5348326, at *4 (N.D. Ill. Sep. 24, 2013) ("Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified."); *Johnson v. Maywood*, 2012 WL 5862756 (N.D. Ill. Nov. 19, 2012) (rejecting argument that complaint that "lumped" police officers together should be dismissed); *Warren ex rel. Warren v. Dart*, 2010 WL 4883923, at *7 (N.D. Ill. Nov. 24, 2010) ("Although it is true that Plaintiffs' complaint does not explicitly parse which of the named Defendants were responsible for which of the above acts or omissions, that level of specificity is not required under federal notice pleading standards") (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)); *Wilson v. City of Chicago*, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) (rejecting the same arguments Defendants advance here, reasoning, "Each Defendant knows what he did or did not do and can admit or deny the

fact based on this knowledge. . . . The Defendants, and not [the Plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [individuals] into giving false testimony.”).[11]

Defendants assert Savory has “utterly failed” to plead sufficient personal involvement in support of his failure-to-intervene claim, citing *Brooks v. Ross*. Motion at 15. Defendants’ reliance on *Books* for this proposition is misplaced—*Brooks* expressly approved of an allegation directed at “all defendants” as satisfying the personal involvement requirement. *Brooks*, 578 F.3d at 582 (“In this paragraph, Brooks adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants.”). In reality, Savory’s failure-to-intervene claim appropriately alleges sufficient personal involvement. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (“[W]hile it is true that a plaintiff must establish a defendant’s personal responsibility for any claimed deprivation of a constitutional right, a defendant’s direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff’s constitutional rights.”) (internal quotations and citations omitted); *see also Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Furthermore, unlike *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990 (N.D. Ill. 2011), Savory’s claims all rely on the same operative set of facts. Defendants have ample notice of the basis for the failure-to-intervene claims.

## VII. SAVORY’S SECTION 1983 CONSPIRACY CLAIMS ARE PLAUSIBLY PLEADED

Defendants also argue, in their discussion of state law claims, that Savory has not adequately pleaded conspiracy. Motion at 20-21. Because this argument could be read to apply to Savory’s

---

[11] *See also Smith v. Illinois*, 2009 WL 1515306, at *6 (N.D. Ill. May 27, 2009) (observing that the “fact that [the plaintiff] has not specifically identified which officer performed which acts is not fatal to his claim at this stage of the litigation”); *Patterson v. Burge*, 328 F. Supp. 2d 878, 887-88 (N.D. Ill. 2004) (“[The plaintiff] specifically names and accuses each of these defendants of committing numerous violations of federal and state law and of conspiring with the other individual defendants to deprive [the plaintiff] of his rights and cause him grievous injuries. Federal notice pleading rules do not require [the plaintiff] to provide detailed explanations of how each particular defendant caused each of his injuries. The court believes the allegations in [the plaintiff’s] complaint are more than adequate to put this court and defendants . . . on notice of the claims against them.”).

section 1983 conspiracy claim, Savory will address it here. Contrary to Defendants' assertion that Savory failed to plead that they reached an agreement to violate his rights, Savory has alleged sufficient facts to support this claim as well.

"[T]he Seventh Circuit has explicitly rejected the existence of a heightened pleading standard for conspiracy claims: '[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.'" *Boothe v. Sherman*, 2014 WL 4362842, at *5 (N.D. Ill. Sep. 3, 2014) (citing *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002)); *see also Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 749 (E.D. Wis. 2014) ("The plaintiff must have alleged 'the parties, the general purpose, and the approximate date of the conspiracy' to escape dismissal.") (citing *Loubser v. Thacker,* 440 F.3d 439, 443 (7th Cir.2006)). In particular, Savory is not required to plead an agreement specifically. *See Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) ("[T]he facts detailing the conspiratorial agreement can be pleaded generally."). "Conspiracies are by their nature carried out in secret, and thus direct proof of agreement is rare." *Tully v. Del Re*, 2002 WL 31175983, at *7 (N.D. Ill. Oct. 1, 2002) (citing *United States v. Sasson*, 62 F.3d 874, 886 (7th Cir. 1995)). For this reason, "a conspiratorial agreement may be established by circumstantial evidence." *Alexander v. City of S. Bend*, 433 F.3d 550, 557 (7th Cir. 2006).

Savory alleges that Defendants engaged in a course of conduct with respect to the criminal investigation in which they maliciously and intentionally targeted Savory for abuse and framed him for a crime he did not commit. This course of conduct started with their highly abusive 31-hour interrogation of a 14-year-old child and continued on with the creation of false reports, the manipulation of multiple witnesses, and the destruction of evidence. As Savory explained elsewhere, *see supra* at 23-24, he does not know at this point the exact role of each officer at each step, but the existence of this ongoing and coordinated course of conduct, all geared toward achieving the same

goal, is more than sufficient to support an allegation that the officers reached an agreement to violate Savory's rights. The conspiracy allegation is sufficient.

## VIII. SAVORY HAS STATED A *MONELL* CLAIM

Defendants argue that Savory has failed to plead a *Monell* claim against the City of Peoria. Motion at 15-16. Defendants' argument does not attack the sufficiency of Savory's allegations under Rule 8. Instead, Defendants argue that because Savory's claims against individual Defendants fail, so must his claims against the City of Peoria. This argument lacks merit. First and foremost, Savory has plausibly pleaded constitutional claims against individual Defendants, as discussed above. Second, the law does not support Defendants' suggestion that a *Monell* claim cannot be stated without some showing of individual liability. Motion at 16 (citing *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000)).[12] Although it is true that Savory cannot succeed on his *Monell* claim without establishing that his constitutional rights were violated, it is not necessary for him to establish that any particular defendant is liable for the violation. As the Seventh Circuit held in *Thomas v. Cook County*, "[A] municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d 293, 305 (7th Cir. 2010). *See also Coleman v. City of Peoria*, 2016 WL 5497363, at *3 (C.D. Ill. Sep. 27, 2016) (*Monell* allows a plaintiff to recover where he "alleges harm traceable to the policies of a municipality for which no individual defendant is liable"); *Cage v. City of Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010) ("[I]t is possible for a verdict to be returned which holds the City liable for its alleged unconstitutional policies even though Cage is unable to link any individual defendants to the constitutional violation."). Savory has plausibly pleaded such *Monell* theories, even setting aside his allegations against the individuals.

[12] It is unclear from Defendants' brief if they intend to advance the argument that a finding of individual liability is necessary to establish *Monell* liability—most of their argument is appropriately stated in terms of the need to establish an underlying constitutional violation. To the extent that Defendants do intend to make that argument, it is so underdeveloped that it should be deemed waived. *Holm*, 326 F.3d at 877 (holding that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

## IX. SAVORY'S STATE-LAW CLAIMS FOR MALICIOUS PROSECUTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CONSPIRACY

The conclusion that Savory's federal claims first accrued with his pardon and invalidation of his conviction compels the separate conclusion that Savory's state-law claims of malicious prosecution, intentional infliction of emotional distress, and civil conspiracy were not timely filed within the one-year period set out in the Illinois Tort Immunity Act, 745 ILCS 10/8-101. *See* Motion at 18-20. Accordingly, if the Court agrees with Savory that his federal claims accrued with his pardon, Savory submits that his state-law claims all accrued at the same moment, rendering them untimely as to all Defendants, including the City of Peoria.

## X. SAVORY'S INDEMNIFICATION CLAIM SURVIVES

Finally, Defendants assert a single argument for dismissal of Savory's indemnification claim, saying that it should not survive if all claims against individual Defendants are dismissed. Motion at 22. Given that claims against individual Defendants will survive for reasons discussed above, however, the Court should reject this argument for dismissal of the indemnification claim.

## CONCLUSION

For all the foregoing reasons, Savory respectfully submits that this Court should deny the Defendants' motions to dismiss with respect to all federal claims and the indemnification claim.

RESPECTFULLY SUBMITTED,

**JOHNNIE LEE SAVORY**

BY: /s/ Steven Art
*One of Plaintiff's Attorneys*

*Attorneys for Johnnie Lee Savory*
Arthur Loevy
Jon Loevy
Elizabeth Mazur
Steven Art
LOEVY & LOEVY
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Flint Taylor
John L. Stainthorp
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0700

Locke E. Bowman
Alexa Van Brunt
MACARTHUR JUSTICE CENTER
Northwestern University
School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-1271

**CERTIFICATE OF SERVICE**

I, Steven Art, an attorney, hereby certify that on September 27, 2017, I filed the foregoing PLAINTIFF JOHNNIE LEE SAVORY'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS using the Court's CM/ECF system, which effected service on all counsel of record listed below.

/s/ Steven Art
*One of Plaintiff's Attorneys*