```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3
    JOHNNIE LEE SAVORY,                )
4                                      )
                    Plaintiff,         )
5                                      )
    -vs-                               )  Case No. 17 C 204
6                                      )
    CHARLES CANNON; MARCELLA           )
7   BROWN TEPLITZ; BETH BELL,          )
    Special Representative of          )
8   Russell Buck; JOHN FIERS;         )
    CHARLES EDWARD BOWERS; JOHN        )
9   STENSON; GEORGE PINKNEY;          )
    E. HAYNES; WALTER JATKOWSKI;       )
10  GLEN PERKINS; ALLEN ANDREWS;       )
    HAROLD MARTENESS; MARY ANN         )
11  DUNLAVEY; CARL TIARKS; BETH        )
    BELL, Special Representative       )
12  of Peter Gerontes; BETH           )
    BELL, Special Representative       )
13  of John Timmes; UNKNOWN            )
    OFFICERS OF THE PEORIA             )
14  POLICE DEPARTMENT; DENNIS          )
    JENKINS; and CITY OF PEORIA,       )
15  ILLINOIS,                          )  Chicago, Illinois
                                       )  October 25, 2017
16                  Defendants.        )  10:15 a.m.

17              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE GARY FEINERMAN
18

19  APPEARANCES:

20  For the Plaintiff:      LOEVY & LOEVY
                            BY:  MS. ELIZABETH N. MAZUR
21                          311 North Aberdeen Street
                            3rd Floor
22                          Chicago, Illinois  60607
                            (312) 243-5900
23
                            PEOPLE'S LAW OFFICES
24                          BY:  MR. G. FLINT TAYLOR, JR.
                            1180 North Milwaukee Avenue
25                          Chicago, Illinois  60622
                            (773) 235-0070
```

1   APPEARANCES:   (Continued)

2   For the Defendants:      THE SOTOS LAW FIRM, P.C.
                             BY:  MR. JOSEPH M. POLICK
3                                 MS. SARA J. SCHROEDER
                             550 East Devon Avenue
4                            Suite 150
                             Itasca, Illinois  60143
5                            (630) 735-3300

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
    Court Reporter:
22
                    CHARLES R. ZANDI, CSR, RPR, FCRR
23                       Official Court Reporter
                      United States District Court
24              219 South Dearborn Street, Room 2128
                        Chicago, Illinois  60604
25                    Telephone:  (312) 435-5387
                 email:  Charles_zandi@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2         THE CLERK:  17 C 204, Savory versus Cannon.

3         MS. MAZUR:  Good morning, Judge.  Elizabeth Mazur for

4    plaintiff.

5         MR. TAYLOR:  I'm Flint Taylor for the plaintiff.

6         MR. POLICK:  Good morning, your Honor.  Joseph Polick

7    on behalf of the defendants.

8         MS. SCHROEDER:  And Sara Schroeder on behalf of the

9    defendants.

10        THE COURT:  Good morning.  And thank you again for

11   your patience.  And I'm sorry I wasn't able to take you when I

12   said I was going to be able to take you.

13        MR. POLICK:  Judge, traffic was miserable getting

14   here this morning, so no apologies necessary.  I appreciate

15   the extra time.

16        THE COURT:  Sure.

17        MR. POLICK:  And I apologize to opposing counsel for

18   running late.

19        THE COURT:  Well, it was harmless error --

20        MR. POLICK:  Thank you.

21        THE COURT:  -- because I wasn't ready for you.

22        So, we have a fully-briefed motion to dismiss --

23   well, I should say we're all scheduled out through next

24   August, and there's a fact discovery deadline in March,

25   experts April through July, dispositive motions in August.

1    And I have a fully-briefed motion to dismiss under 12(b)(6),
2    and there's also a motion to compel discovery and a cross
3    motion to stay discovery pending resolution of the motion to
4    dismiss.
5            So, let's talk about the motion to dismiss.  The
6    four -- I read the plaintiff's opposition brief as to the
7    Fourth Amendment claim to say that the Fourth Amendment claim
8    is a detention claim and not a malicious prosecution claim.
9    Did I read that correctly?
10           MS. MAZUR:  That's correct.
11           THE COURT:  Okay.
12           MS. MAZUR:  Now that the Supreme Court has clarified.
13           THE COURT:  Yes.  And in terms of when Mr. Savory's
14   parole expired, I'm reading the opposition as accepting that
15   Mr. Savory's parole expired in December of 2011, is that
16   right?
17           MS. MAZUR:  That's correct.
18           THE COURT:  So, then, for purposes of the statute of
19   limitations, the question becomes:  Did -- was the *Heck* bar
20   lifted in December of 2011 or when the pardon -- or whatever
21   Governor Quinn did.  Was it a pardon?
22           MS. MAZUR:  It was a pardon.
23           THE COURT:  Yes, whenever the pardon was issued.
24           So, what am I to do with *Spencer* and *DeWalt*?  It
25   seems pretty clear that -- at least to me, that five, maybe

1  six justices in *Spencer* and then the Seventh Circuit in *DeWalt*
2  said that once custody ends, which in this context means once
3  mandatory supervised release under Illinois law expires, the
4  *Heck* bar is lifted, and then the limitations period commences.
5       MS. MAZUR:  I guess, Judge, we would say two things
6  about those cases; and I'd pretty much be reiterating what's
7  in our brief, which is that first of all, the -- you know,
8  this Court follows Supreme Court holdings, not concurrences.
9  And we acknowledge that there is that sort of five-justice
10 lineup that was observed by the court in *DeWalt*.  But that
11 sort of lineup wasn't the type of -- it's not -- what do they
12 call it -- a narrow ground on which a collection of concurring
13 opinions is essential so the judgment agrees.  It wasn't --
14 they were concurring on an issue that wasn't even the holding
15 in *Spencer*.
16      THE COURT:  I agree.  So, this isn't a *Marx versus*
17 *United States* situation where we have to take the narrowest
18 ground to support the judgment because the concurring justices
19 in *Spencer* weren't talking about anything that was central to
20 the judgment.  It was just Justice Souter refighting the
21 battle that he had lost in *Heck*, but then he won it on this
22 kind of side issue in *Spencer*.
23      MS. MAZUR:  Sure.  And then I guess, you know, we
24 acknowledge that the Seventh Circuit kind of looked at that in
25 *DeWalt*.  And again, *DeWalt* fundamentally, though, was a case

1    about saying that the *Heck* bar doesn't apply. The plaintiff

2    in *DeWalt* wasn't challenging his -- directly attacking a

3    criminal conviction the way Johnnie Lee Savory is. That

4    was -- and it didn't -- the Court specifically noted that he

5    wasn't challenging the fact of or the length of detention.

6    It was a disciplinary thing that had been meted out while he

7    was in prison.

8        So, I think that the way we think it's proper to

9    read *DeWalt* is that there's -- the *Heck* bar is lifted if

10    habeus was never a thing that the person really had as a

11    remedy to what they're complaining about to begin with.

12        And I think the -- one other point, and I'm not sure

13    if we made it in our brief, is if the rule is that there's a

14    *Heck* bar -- there's no *Heck* bar whenever someone is released

15    from prison provided that they did something to seek habeus

16    when they were in prison, there would be, like, a flood of

17    these cases, of these 1983 cases because everyone would just

18    wait until they got out of prison and then file a lawsuit

19    attacking their conviction.

20        So, that's why we think the proper way to read *DeWalt*

21    is kind of what we described in our brief and what I just

22    said.

23        THE COURT: Yeah. But in -- I understand your

24    situation. So, there are -- the five, maybe six justices in

25    *Spencer* addressed this issue even though it wasn't necessary

1   to the holding of *Spencer*.  And then in *DeWalt*, the Seventh

2   Circuit added up the votes in *Spencer* and said --

3   recapitulated what the five or maybe six justices in *Spencer*

4   said.  And even in *DeWalt*, it wasn't necessary.  That wasn't

5   necessary to the holding.

6           But the fact of the matter is the Seventh Circuit

7   said it and then distinguished that holding, the *DeWalt*, if

8   you want to call it a holding -- the *DeWalt* articulation of a

9   principle in *Burd* and recognized an exception to the

10  exception.  The exception is -- the exception to *Heck* is when

11  custody ends, the *Heck* bar is lifted, even though the

12  underlying conviction wasn't -- hadn't been vacated.  But then

13  there's an exception to that exception if during the period of

14  custody the plaintiff did nothing to try and seek collateral

15  relief and to get rid of the conviction.

16          But that's not our situation because Savory did try;

17  and as thanks for that, he falls under *DeWalt* as opposed to

18  *Burd*, which is a little ironic, but that's what the law is.

19          So, given that we not just have -- we not only have

20  the five or six justices in *Spencer* -- and when I say five or

21  six, I think Justice Stevens agreed with Justice Souter, but

22  I'm not quite sure.  We do have the Seventh Circuit, whose

23  opinions I have to follow, saying that this is the law, that

24  what the five justices said in *Spencer* is the law.  So, I

25  don't know if I can say, "Well, no, it's not the law," if

1   the Seventh Circuit said it is the law.

2          MS. MAZUR:  Sure.  I think -- you know, our response

3   to that, I think, is that the Seventh Circuit has never looked

4   at a case with facts like ours.  *DeWalt* was a different

5   factual scenario.

6          And there was -- we cite it in our brief -- even more

7   recently -- and I'm sorry.  I didn't put it up before I got

8   here.  But there was a more recent Seventh Circuit case, and

9   it was *Hadley versus Quinn*, which we cited in our brief.  It's

10  524 Federal Appendix 290, where they -- they sort of reaffirm

11  the notion that the *Heck* bar doesn't apply to situations where

12  habeus was never really an avenue available for the type of

13  relief sought in the first place.

14         And as I -- I'm sorry.  I looked at some of these

15  cases last night and the facts are all swirling around in my

16  head, but I think that was one that was a little more similar

17  to the factual situation that we have here, where a person was

18  seeking to attack a conviction after he was released from

19  custody, unlike *DeWalt* where a person is complaining about

20  something unfair that happened to him while he was in prison

21  but not attacking the fact of the conviction that sent him to

22  prison.

23         THE COURT:  And *Hadley* is a -- it's in the Federal

24  Appendix, so it's not precedential; but still, I look at

25  Seventh Circuit decisions in the Federal Appendix.  Did *Hadley*

1 say that what *DeWalt* said about *Spencer* was wrong?

2    MS. MAZUR: I cannot recall as I stand here right

3 now. I do not think it did that.

4    MS. SCHROEDER: Your Honor, if I may add one thing,

5 co-counsel -- or opposing counsel said that the Seventh

6 Circuit has never really addressed something, a case that is

7 similar to the case before the Court; but in *DeWalt*, they

8 specifically overruled *Anderson versus City of Montgomery*, and

9 they said that that ruling, in light of the ruling in *DeWalt*,

10 would be explicitly overruled.

11    And in *Anderson*, the plaintiff was -- he was

12 challenging his conviction. He felt his guilty plea had been

13 coerced. And at the time, the Seventh Circuit had said *Heck*

14 was a bar. *Heck* was a bar to him because he was released from

15 custody but his conviction was still standing. And in *DeWalt*,

16 they overruled that.

17    So, that would be analogous to a situation right now

18 where the Seventh Circuit would say a plaintiff in the

19 position of Savory would not have a *Heck* bar once he was

20 released from custody.

21    THE COURT: So, you're saying that *Anderson* is akin

22 to our case, to *Savory*?

23    MS. SCHROEDER: Yes.

24    THE COURT: And when DeWalt overruled *Anderson*, that

25 means -- that confirms that the Seventh Circuit meant what it

Case: 1:17-cv-00204 Document #: 101 Filed: 06/22/18 Page 10 of 13 PageID #:543

10

1    said in *DeWalt*?

2           MS. SCHROEDER:  Correct.

3           THE COURT:  Anything on that?

4           MS. MAZUR:  You know, I guess honestly, when I read

5    *Anderson* and look at these cases, in particular, to some

6    extent *Whitfield*, is that, you know, I think a little bit of

7    what's going on here is that the court looks at a claim and

8    decides if it's something that it feels like should be

9    allowed; and in *Anderson*, it was clear that no one thought

10   that that guy should be able to file a lawsuit, and so that

11   kind of led to the outcome in that case.  And in *Whitfield*, I

12   think you see again a little more of the Seventh Circuit kind

13   of being like, "Well, did he complain while he was in court?

14   Was it a lot?  Was it enough?  Did he try?  Was he being

15   lazy?"

16          And I guess I would just note that, you know, none of

17   these cases really present the situation that's before the

18   Court here exactly.  Here, we have Mr. Savory.  He has fought

19   for his innocence non-stop from the minute, you know, after

20   he was charged in 1977.  He's done everything he possibly

21   could.  He got out -- he was released from parole in 2011, and

22   it wasn't until he got his pardon that he brought this claim.

23          There's no -- there's no court that has looked at

24   that sort of factual scenario and said, "Oh, gotcha, too late.

25   You should have filed this when you got out."

1    THE COURT:  I see.

2    MS. SCHROEDER:  Your Honor, I believe courts do look

3  at that.  That's what they call the accrual date.  It's when

4  you're able to file a claim, when you have a complete action

5  and you have the ability to file the claim.  And that would be

6  the date that he was released from custody.

7    Furthermore, I don't think any of the law here or any

8  of the cases here say that this is on a case-by-case basis.

9  It's not.  They're looking at:  Are there certain elements

10  that are met?  Is he released from custody?  Did he file

11  habeus corpus?  And does he no longer have habeus relief

12  available to him?  If those three things are met, then under

13  *DeWalt*, under *Burd*, under *Whitfield*, under *Spencer*, that

14  plaintiff is able to file his 1983 lawsuit.  And that was the

15  case here for Mr. Savory when he was released from custody in

16  2011.

17    THE COURT:  Okay.  Is there any -- the defendants had

18  the last word in writing.  Is there anything in the reply

19  brief that you'd like to respond to?

20    MS. MAZUR:  You know, if I could just maybe -- I'm

21  not 100 percent sure.  There was one point that I wanted to

22  confer a little bit more with our co-counsel, and he's out of

23  town on another matter.  So, maybe if I could reserve the

24  right to do something in very short order, and then maybe if

25  we decide we don't need to do that, we can --

1          THE COURT:  Yeah, I was asking you if you wanted to

2  respond here in court to anything in the reply brief.

3          MS. MAZUR:  Okay.

4          THE COURT:  And I'm not foreclosing you from filing a

5  surreply.  I just wanted to know if there was anything in the

6  reply that you wanted to address today.

7          MS. MAZUR:  No, not today.

8          THE COURT:  So, if you do want to file a surreply, I

9  encourage you to file your motion sooner rather than later --

10         MS. MAZUR:  Got it.

11         THE COURT:  -- for leave to file.

12         Anything else on the motion to dismiss?

13         MS. SCHROEDER:  No, your Honor.

14         THE COURT:  So, on the motion to compel discovery and

15  the cross motion to stay discovery, I -- given the serious

16  statute of limitations issue, I'm going to -- I'm going to

17  deny without prejudice the motion to compel discovery, and I'm

18  going to grant the motion to stay discovery as it pertains to

19  interrogatory responses and -- and depositions.  So, let's

20  continue with the document production.  Let's not have

21  interrogatory responses or depositions.

22         And I know that the clock is ticking, so I'll rule on

23  the motion to dismiss as soon as I can, hopefully, and my aim

24  will be in the coming weeks -- I should say in the coming

25  month.

1    And if I deny the motion to dismiss in whole or in

2  part, then obviously, you're off to the races on

3  interrogatories and depositions.  If I grant the motion, then

4  obviously, there aren't -- there isn't going to be any more

5  discovery.

6    So, why don't we -- let me set this for the week of

7  December 4th, Jackie.

8    THE CLERK:  Sure.  How about -- how about

9  December 7th, 9:15 a.m.

10    MS. SCHROEDER:  Very good.

11    THE COURT:  Is that all right?  Okay.  Thank you very

12  much.  Thanks for the excellent briefs, and thanks for

13  addressing my questions here in court.

14    MS. MAZUR:  Okay.

15    MS. SCHROEDER:  Thank you, your Honor.

16    MR. POLICK:  Thank you.

17    (Which were all the proceedings heard.)

18                         CERTIFICATE

19    I certify that the foregoing is a correct transcript from

20  the record of proceedings in the above-entitled matter.

21

22  */s/Charles R. Zandi*              *April 11, 2018*

23  Charles R. Zandi                  Date
     Official Court Reporter

24

25