UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE LEE SAVORY, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 204 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WILLIAM CANNON, SR., as Special Representative | ) | |
| of the Estate of Charles Cannon, MARCELLA | ) | |
| BROWN TEPLITZ, BETH BELL, as Special | ) | |
| Representative of Russell Buck, Peter Gerontes, and | ) | |
| John Timmes, JOHN FIERS, CHARLES EDWARD | ) | |
| BOWERS, JOHN STENSON, GEORGE PINKNEY, | ) | |
| E. HAYNES, WALTER JATKOWSKI, GLEN | ) | |
| PERKINS, ALLEN ANDREWS, HAROLD | ) | |
| MARTENESS, MARY ANN DUNLAVEY, CARL | ) | |
| TIARKS, and CITY OF PEORIA, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Johnnie Lee Savory brings this suit under 42 U.S.C. § 1983 against the City of Peoria and several of its police officers, alleging that they framed him for the 1977 murders of James Robinson and Connie Cooper. Doc. 1. The court recently granted in part and denied in part Defendants' Civil Rule 12(b)(6) motion to dismiss. Docs. 170-171 (reported at 532 F. Supp. 3d 628 (N.D. Ill. 2021)). Before the court is the City's motion under Rule 42(b) to bifurcate Savory's claim against the City—brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978)—and to stay discovery and trial on that claim until his remaining claims against the officers are resolved. Doc. 186. The motion is granted.

## Background

The complaint's factual allegations are detailed in the court's prior opinion, familiarity with which is assumed. In brief, Savory was arrested in January 1977 for the rape and murder of

1

Connie Cooper and the murder of James Robinson, and he was convicted later that year. Doc. 1 at ¶¶ 1, 76. In this suit, Savory alleges that the officer defendants coerced his confession, fabricated evidence, and destroyed and withheld exculpatory evidence. *Id*. at ¶¶ 5-7. Savory's § 1983 claims against the officers are: Fifth and Fourteenth Amendment coerced and false confession claims, *id*. at ¶¶ 88-98; a Fourth Amendment unlawful detention claim, *id*. at ¶¶ 99-103; a Fourteenth Amendment wrongful conviction claim, *id*. at ¶¶ 104-110, 112-113; and a failure to intervene claim, *id*. at ¶¶ 114-118. Savory's *Monell* claim against the City alleges that its unlawful policies, practices, and customs led to his wrongful prosecution, conviction, and imprisonment. *Id*. at ¶¶ 119-130. Those claims survived Defendants' Rule 12(b)(6) motion. 532 F. Supp. 3d at 632-40.

To support his *Monell* claim, Savory seeks extensive discovery from the City, including: written policies and procedures of the City and its police department, in place from 1972 through 2015, addressing the documentation of investigations, the collection and preservation of evidence, and the interrogation and interviewing of suspects and witnesses, as well as each policymaker responsible for those policies, Doc. 186-4 at 9-10; each instance from 1972 through 2015 in which a policymaker reviewed any of those policies, as well as any steps taken in response to the review, *id*. at 10; and "any and all changes" made from 1987 through 2012 to the City's and its police department's policies, practices, and training programs relating to any of the foregoing policies or procedures, including how those changes were communicated to employees, *ibid*. In addition, Savory seeks all the City's and its police department's written policies and procedures, from 1970 through the present, related to investigations. Doc. 186-3 at 5-6; Doc. 186-2 at 16.

**Discussion**

"The ultimate decision to bifurcate under Rule 42(b) is at the [district] court's discretion and will be overturned only upon a clear showing of abuse." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999); *see also Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (same). Although bifurcation typically cleaves liability from damages, "there is no rule that if a trial is bifurcated, it must be bifurcated between liability and damages. The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995).

Bifurcation may be ordered if three conditions are met: "First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment." *Houseman*, 171 F.3d at 1121 (internal citations omitted); *see also Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (same). All three conditions are satisfied here.

I. **Judicial Economy**

The City argues that bifurcating the *Monell* claim will promote efficiency because discovery on that claim will be far broader and more burdensome than discovery on the claims against the officer defendants. Doc. 186 at 8-11. The City's argument rests on the premise that Savory cannot prevail on his *Monell* claim unless at least one officer is found to have committed a constitutional violation. *Id*. at 5-8. If that premise is correct, bifurcating the *Monell* claim has

3

the potential to save the parties and the court the time, effort, and expense of litigating that claim, for if all the officer defendants prevail, then the *Monell* claim would be dismissed.

As a general rule, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."); *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported."). An exception holds that "a municipality can be held liable under *Monell*, even when its officers are not," if that outcome would not "create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). In *Thomas*, the plaintiff alleged that the Cook County Jail's failure to respond to a detainee's medical requests caused his death and violated his due process rights. *Id*. at 299-300. The Seventh Circuit ruled that Cook County could be liable under *Monell* even if no county employee violated the constitution because the detainee's death could have been caused by "the well-documented breakdowns in the County's policies for retrieving medical request forms" rather than by any employee's deliberate indifference. *Id*. at 305.

Savory argues that this case likewise presents a circumstance where a plaintiff's verdict on his *Monell* claim would not be inconsistent with defense verdicts on his claims against the officer defendants. Doc. 188 at 5-7. In so arguing, Savory does *not* suggest he could prevail against the City if no officer violated his constitutional rights. That stands to reason, as a municipality's "alleged practices of coercing false testimony, creating false or misleading investigative reports, and failing to preserve and produce exculpatory evidence … depend on

4

individual Officer actions." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018); *see also Harris v. City of Chicago*, 2016 WL 3261522, at *3 (N.D. Ill. June 14, 2016) ("The nature of the alleged constitutional violations, fabricating a confession and coercing Plaintiff into making that confession, depends on the individual officers' actions."); *Taylor v. Kachiroubas*, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) (holding that because "the actions of the individual officers in collecting and fabricating evidence against [the plaintiffs] are the source of the alleged harm to the[m]," *Monell* liability depended on the officers' actions). Here, any practice, policy, or failure to train on the City's part could have harmed Savory only if one or more officers violated his constitutional rights by coercing his confession, fabricating evidence, and/or destroying or withholding exculpatory evidence.

Instead, Savory notes that if the officers prevail on their qualified immunity defense, they could be relieved of liability even if they violated his constitutional rights in a way that could predicate *Monell* liability. Doc. 188 at 6. That argument is unpersuasive, at least at this juncture. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability," and is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Given its nature, qualified immunity is raised before trial, often at summary judgment. *See Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (noting that the Supreme Court "'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Thus, if the court bifurcates the *Monell* claim now, and later determines at summary judgment that one or more officers may have violated Savory's rights but are entitled to qualified immunity, the court at that point would revisit the bifurcation question. *See Taylor*, 2013 WL 6050492, at *4 (reaching the same conclusion).

Savory also contends that discovery might reveal a "yet-to-be identified" Peoria Police Department employee who violated his constitutional rights, making it possible that the City's *Monell* liability could rest on that employee's conduct even if none of the named officer defendants are liable. Doc. 188 at 6-7. While theoretically possible, it is extraordinarily unlikely that another, more culpable individual will be newly discovered given that Savory's claims, in one form or another, have been litigated in state and federal court for decades. *See Savory v. Cannon*, 338 F. Supp. 3d 860, 862 (N.D. Ill. 2017) (listing Savory's related state and federal court litigation from 1987 onward), *rev'd on other grounds*, 947 F.3d 409 (7th Cir. 2020). Still, if that circumstance arises, Savory of course may ask the court to reconsider bifurcation.

In sum, as matters now stand, there is very little chance that Savory could prevail on his *Monell* claim against the City without securing a verdict against at least one of the officer defendants. With that premise established, the next question is whether efficiency would be served by bifurcating the *Monell* claim and staying *Monell*-related discovery until the claims against the officer defendants are resolved. The City maintains that bifurcation would "significantly decrease the overall number of documents required to be produced and depositions conducted," avoid the need for *Monell* experts, and reduce the number of discovery disputes requiring court resolution. Doc. 186 at 8-11. Savory retorts that discovery on his claims against the officers would include "much of the same discovery" that the City erroneously describes as related solely to his *Monell* claim. Doc. 188 at 7-11.

Savory's written discovery requests call for details of the City's and its police department's policies, procedures, and practices spanning up to a fifty-year period. Doc. 186-3 at 5-6 (No. 26) (request for production seeking all written policies and procedures related to investigations, without time limit); Doc. 186-2 at 17 (stating that, "[i]n the spirit of compromise,

Plaintiff proposes limiting his Request [No. 26] to the period of 1970 to the present");
Doc. 186-4 at 9-10 (interrogatories seeking details about policies and procedures from
1972-2015).  At the hearing on this motion, the City stated that it had produced certain general
orders, personnel rules, and some policy and training documents from 1970 through 1997, and
Savory suggested that he might be amenable to limiting discovery to somewhat narrower
timeframes.

While the exact details of the parties' positions on the temporal and substantive scope of
Savory's written discovery requests are unclear, his requests indisputably are wide-ranging and
voluminous.  Savory contends that his case against the officer defendants will "require much of
the same discovery even if his *Monell* claim is bifurcated," reasoning that the City's policies and
procedures are necessary for possible impeachment purposes because the officer defendants
"may claim that they have no knowledge of the underlying facts of the case apart from their
written reports and usual practices."  Doc. 188 at 9.  But Savory does not explain, and the court
does not understand, how policies that post-date the timeframe of the murder investigation and
trial, not to mention the defendant officers' tenure with the Peoria police, have any bearing on
the veracity of their testimony or their investigation of Savory.

Savory similarly contends that "[f]acts relating to the claims against the individual
defendants overlap with facts relating to Plaintiff's *Monell* claims," making it inefficient for the
same witnesses to travel from Peoria to Chicago to testify twice.  *Id*. at 10.  But he does not
explain which facts overlap or why the same witnesses would testify regarding the officers'
involvement in Savory's arrest and prosecution, on the one hand, and the City's general policies,
practices, and training concerning fabrication and destruction of evidence, falsification of
witness testimony, and failure to maintain and disclose investigative files to prosecutors and

criminal defendants, on the other.  And Savory's point rests on the disputed premise that, ultimately, this case will be tried in Chicago rather than in Peoria.  Doc. 67 (denying without prejudice to renewal Defendants' motion under 28 U.S.C. § 1404(a) to transfer the suit to the Central District of Illinois).

Thus, much of Savory's discovery requests for documents and detailed information about the City's and its police department's policies and procedures spanning up to fifty years likely have no bearing on his claims against the officer defendants.  In addition, as the City notes, Doc. 186 at 10, litigating Savory's *Monell* claim would entail expert discovery regarding the City's general policies and training.  The prospect of avoiding all that burdensome additional discovery weighs heavily in favor of bifurcating the *Monell* claim.  *See Taylor*, 2013 WL 6050492, at *3 ("Courts have frequently noted the heavy burdens of discovery related to *Monell* claims."); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *2 (N.D. Ill. July 16, 2008) ("We agree with the City that it is more efficient to resolve Plaintiffs' claims against Defendant Officers before turning to the more burdensome and time-consuming task of litigating the *Monell* claim.") (internal quotation marks omitted); *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) ("[C]laims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.").

Asserting that the City has not "made an actual inquiry into the burden of complying" with *Monell* discovery, Savory submits that it might not be so burdensome to identify changes the City and its police department made in fifty years' worth of policies and procedures because "it may be that those documents did not change often, certainly not every year, between 1981 and 2015."  Doc. 188 at 8.  That argument fails to persuade.  The City has already begun

producing written policies sought by Savory, at least those from 1972 through 1982, Doc. 186-2 at 17-18 (No. 8.4), allowing it to assess the difficulty of complying with his discovery requests. And even if Savory's speculation that the policies changed infrequently is accurate, his requests for fifty years' worth of policies addressing a wide range of practices indisputably will result in voluminous and burdensome document searches and production.

Finally, Savory asserts that the appropriate avenue for the City to dispute the appropriate scope of his *Monell*-related discovery requests is a Local Rule 37.2 conference and motion practice, not a motion to bifurcate. Doc. 188 at 8. Yet the Seventh Circuit has endorsed stays of *Monell* claims to "achieve[] the goal of avoiding unnecessary complexity and effort." *Swanigan*, 775 F.3d at 963. That complexity and effort surely includes the burden of engaging in discovery conferences and litigating discovery motions.

## II. Prejudice

The City argues that the introduction at trial of its allegedly improper "policies, practices, and customs" may lead the jury to unfairly assume that the officer defendants acted improperly as well. Doc. 186 at 11-12. Savory responds that introduction of the City's policies and practices could not be prejudicial because they are "relevant to claims against an individual Defendant who will likely claim to have acted in conformity with citywide policy," and that the City fails to identify any prejudice resulting from *Monell*-related discovery. Doc. 188 at 11. Savory also argues that a bifurcation and discovery stay on his *Monell* claim will prejudice him by unnecessarily prolonging the litigation, increasing his burden of recovery, and delaying institutional reform by the City. *Id*. at 12-13.

The City has the better of the argument. The officer defendants face a risk of unfair prejudice from the prospect that the jury would attribute to them the "various acts of alleged police misconduct committed by numerous non-party officers [admitted] to establish a policy or

9

practice." *Lopez v. City of Chicago*, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002); *see also Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 934-35 (N.D. Ill. 2012) ("If admitted as part of the case against Municipal Defendants, such [policy and practice] evidence could prejudice the Defendant Officers' ability to distinguish their own actions from those of other non-party officers. This strongly favors bifurcation of the *Monell* claims … ."); *Jones v. City of Chicago*, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999) (holding that "a substantial risk exists that the introduction of *Monell* evidence would severely prejudice the individual officers," as the plaintiff's *Monell* evidence included "various acts of alleged police misconduct and excessive force committed by numerous non-party officers over the past twelve years"). Moreover, it is immaterial that the City does not identify any prejudice stemming specifically from *Monell*-related discovery, as bifurcation is appropriate so long as judicial economy is promoted *or* prejudice is avoided. *See Chlopek*, 499 F.3d at 700 (holding that bifurcation is warranted under Rule 42(b) so long as it would "prevent prejudice to a party or promote judicial economy," and that only "one of these criteria" must be met). Although the prejudice from trying Savory's claims against the officer defendants together with his *Monell* claim could be avoided by bifurcating the trials without staying *Monell*-related discovery, staying discovery until the officer defendants' culpability is resolved is by far the most efficient course.

Savory's arguments as to why bifurcation and a discovery stay will prejudice his interests similarly fail to persuade. Bifurcation will not "unnecessarily prolong litigation," Doc. 188 at

12—rather, it will allow the parties to more quickly resolve the officer defendants' liability and likely will make the overall litigation far more efficient. Savory additionally submits that any extra delay in allowing discovery on the *Monell* claim could "severely prejudice [him] given that the underlying facts took place in 1977 and many Defendants are already elderly and deceased." *Ibid*. But Savory can depose the officer defendants in connection with his claims against them, and those depositions will likely cover whatever testimony would be pertinent to his *Monell* claim.

Savory next asserts that bifurcation will "make the burden of recovery greater by requiring [him] to participate in two trials" and "could prevent [him] from making a full financial recovery." *Ibid*. That argument fails, as Savory can recover only once for the constitutional violations he alleges. *See Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) ("Federal common law prevents § 1983 plaintiffs from recovering twice for the same injury. That means [the plaintiff] cannot recover from the City for the prolonged detention because he was compensated for that constitutional violation in his suit against the officers.") (citation omitted). If the officer defendants prevail at trial, Savory's *Monell* claim against the City almost certainly will be dismissed, as shown above. And if one or more officer defendant is liable, Savory can recover his damages in full and will not be entitled to any further recovery against the City. Thus, staying litigation of the *Monell* claim will not impact Savory's ability to make a full financial recovery.

Finally, Savory argues that delaying litigation of his *Monell* claim will prejudice his interests in achieving institutional reform. Doc. 188 at 12-13. But any judgment against one or more officer defendants would reflect poorly on the City, and any additional marginal benefit from obtaining a *Monell* judgment against the City for events that took place decades ago is

outweighed by the costs and prejudice to the officer defendants of not bifurcating the *Monell* claim. *See Ojeda-Beltran*, 2008 WL 2782815, at *4 (finding that any prejudice against the plaintiffs resulting from the delay of potential non-economic relief from their *Monell* claim did not outweigh "party convenience, judicial economy, [and] prejudice against Defendant Officers").

In sum, bifurcating Savory's *Monell* claim and staying *Monell*-related discovery will avoid unfair prejudice to the officer defendants and does not unfairly prejudice Savory.

## III. Seventh Amendment

The Seventh Amendment states that "no fact tried by a jury[] shall be otherwise reexamined." U.S. Const. amend. VII. A district court accordingly "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). "While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." *Houseman*, 171 F.3d at 1126.

Savory contends that separate trials of his claims against the officer defendants and his *Monell* claim against the City will violate the Seventh Amendment by requiring two juries to "consider whether and how each Plaintiff's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated their right to due process, and the second to assess whether the City's policies were the cause." Doc. 188 at 13. The City responds that the two trials will entail distinct factual and legal inquiries, as the "*Monell* claim involves inquiries into the City's policies, practices, and customs," while the "claims against the Individual Defendants involve[] inquiries into the actions by the Individual Defendants." Doc. 186 at 13.

Again, the City has the better of the argument. Savory's *Monell* claim centers on the City's allegedly "widespread practice[s] and custom[s]" of coerced confessions, fabrication and destruction of evidence, falsification of witness testimony, and failure to maintain and disclose investigative files to prosecutors and criminal defendants. Doc. 1 at ¶¶ 124-125. That claim, if tried, would require evaluation of the City's policies, practices, and procedures over several decades. Savory's claims against the officer defendants focus on their specific actions during a discrete period. *Id*. at ¶¶ 31-68, 88-98, 104-118. It follows that trying those claims separately would not violate the Seventh Amendment. *See Houseman*, 171 F.3d at 1128 ("[T]hat much of the evidence presented in the first trial would have been re-examined in the second … does not raise constitutional concerns. … Because the two juries were asked to decide distinct questions, and because the second jury could not have re-examined the conclusions of the first, the Seventh Amendment was not offended by the bifurcation order."); *Treadwell v. Salgado*, 2022 WL 267988, at *8 (N.D. Ill. Jan. 28, 2022) (holding that bifurcating the plaintiff's *Monell* claim "would not raise a Seventh Amendment concern" because, although the plaintiff's "claims against the Defendant Officers and the City are based on some overlapping facts, they involve different theories of liability").

## Conclusion

The City's motion to bifurcate and stay discovery on Savory's *Monell* claim is granted. The *Monell* claim is bifurcated from the claims against the officer defendants, and discovery that pertains exclusively to the *Monell* claim is stayed absent further court order.

March 14, 2022

_____

United States District Judge